**Kenneth J. SEALS, Plaintiff,**

v.

**Dr. Chandresh B. SHAH and Dr. Saurabh D. Desai, Defendants.**

No. CIV.A.1:99–CV–3071–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

May 4, 2001.

Jean E. Johnson, Jr., Johnson, Cooper & Jones, Dana L. Jackel, J. Lynn Rainey, Christopher Lee Phillips, Jackel Rainey Marsh & Busch, Marietta, GA, for Kenneth J. Seals, plaintiffs.

Dennis Gary Lovell, Jr., Webb, Carlock, Copeland, Semler & Stair, Theodore Free-

man, Maureen M. Middleton, Dana Kristin Maine, Freeman, Mathis & Gary, Atlanta, GA, Kimberly P. Murphy, Office of Kimberly P. Murphy, Atlanta, GA, for Douglas County, A Political Subdivision for the State of Georgia, Tommy Waldrop, Individually and in his Official Capacity as Sheriff of Douglas County, Georgia, Chandresh B. Shah, Dr., Saurabh D. Desai, Dr., Patricia Maxwell, L.P.N., N. Harrington, L.P.N., defendants.

## ORDER

THRASH, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983. It also includes related state law medical malpractice claims. It was removed to this Court from the State Court of Cobb County. It is before the Court on Defendant Chandresh B. Shah's Motion for Partial Summary Judgment [Doc.38] on the Section 1983 claims. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

The following facts are construed in the light most favorable to the Plaintiff as the nonmovant. Plaintiff contends that he was injured as a result of neglect of a serious medical condition while incarcerated in the Douglas County jail. He asserts state law claims, including a claim for medical malpractice, as well as a claim pursuant to 42 U.S.C. § 1983 for violation of his Eighth Amendment constitutional protection against cruel and unusual punishment. On August 29, 1997, Plaintiff was incarcerated in the Douglas County Jail after being arrested for various drug charges. During the book-in process, Plaintiff was asked several questions regarding his medical condition. Plaintiff mentioned that he suf-

fered headaches and had received an arterial graft. Plaintiff also mentioned that he took the medication Altace for high blood pressure. Otherwise, Plaintiff identified no medical problems.

On September 10, 1997, while still incarcerated, Plaintiff was examined by Nurse Harrington because his blood pressure was high. During the examination, Plaintiff indicated to Nurse Harrington that in 1996 he had received a graft in the main artery to both his legs and was suffering aching in the upper area of both legs. Plaintiff did not seek any other care from the Douglas County Jail medical staff after this examination. He bonded out of the Douglas County Jail a few days thereafter.

On March 24, 1998, Plaintiff pled guilty to several of the drug charges stemming from his August, 1997, arrest. He was reincarcerated at the Douglas County Jail. Again during the book-in process, Plaintiff was asked questions regarding his medical history. He mentioned that he had high blood pressure but otherwise had no complaints. A week later, on March 31, Nurse Damiano examined Plaintiff and noted no change in his physical or mental condition since the September, 1997, examination.

On March 28, 1998, Plaintiff submitted a trustee request form. Plaintiff met with Lieutenant Bonnie and stated that he wanted trustee status. Plaintiff was granted trustee status and moved to the trustee dormitory on April 3, 1998. He began his trustee work in the jail shop on April 6, 1998. Plaintiff first began to experience problems with his leg his first day in the shop. Plaintiff has testified that his leg became numb, his calf tightened, and his foot had a burning sensation in the left side. That afternoon or evening, Plaintiff submitted a request for medical care, indicating that his left leg was numb, his foot

was swollen, his toes were "on fire," his foot was cold, and he had no feeling in his toes.

The next morning, April 7, Plaintiff was escorted to the medical facility, where Nurse Damiano examined Plaintiff. Nurse Damiano examined Plaintiff's foot, took his blood pressure, performed an electrocardiogram, and placed Plaintiff on the list to see a doctor. Later in the morning of April 7, Dr. Shah examined Plaintiff. Dr. Shah was provided with the medical history compiled by Nurse Damiano and Plaintiff's request for medical care which included his specific complaints of pain and numbness in his leg. Nurse Damiano had noted a positive Homans' sign on the left leg, which can indicate the existence of a thrombosis (blood clot) in the leg; that the leg's pulse was difficult to palpate; and that the leg was bluish-yellow in color. Dr. Shah believed that these symptoms indicated a venous problem. Dr. Shah contends that he conducted an examination of Plaintiff and found that Plaintiff was experiencing high blood pressure but, unlike Nurse Damiano, did not notice any swelling or discoloration of the leg. Dr. Shah also states he did not find that the leg was cool to the touch and he was able to palpate a pulse in the leg. Based on his examination, Dr. Shah did not believe that Plaintiff was suffering any arterial occlusion but rather a venous occlusion in the leg. Plaintiff, however, alleges that Dr. Shah never even touched him and only read over the nurses' notes and chart information. Neither Nurse Damiano or Nurse Harrington, the two nurses present at the time, recall Dr. Shah himself conducting any type of physical examination of Plaintiff, although Nurse Harrington's review of the medical record leads her to believe that Dr. Shah did do so. Nurse Damiano simply states, "I honestly can't recall seeing him check, but I can't say he didn't." (Deposition of Patricia Anne Damiano, p. 32.)

Dr. Shah knew from Plaintiff's medical history, and possibly his own evaluation of Plaintiff, that Plaintiff suffered chronic peripheral vascular disease in his legs. He prescribed Trental to treat the condition. He also increased Plaintiff's Altace dosage to control his high blood pressure. In addition, Dr. Shah ordered Plaintiff's past medical records from Cobb General Hospital to evaluate his condition further. He removed Plaintiff from trustee status and placed him on bed rest. Dr. Shah scheduled a follow-up appointment for the next Monday, six days later.

Nurse Damiano examined Plaintiff the following morning, April 8. She recorded that Plaintiff's leg continued to throb, remained discolored, and was still somewhat cool to the touch. (Deposition of Patricia Anne Damiano, p. 42; Deposition of Nancy Harrington, Ex. G.) Plaintiff told her that the pain was like a "blowtorch to my toes." (Deposition of Kenneth Seals, p. 148.) Nurse Harrington noted in her deposition that Dr. Shah read and initialed Nurse Damiano's notes, but Dr. Shah contends that he did not see the notes until as late as April 13. (Deposition of Nancy Harrington, pp. 132–34, 138; Deposition of Chandresh B. Shah, M.D., p. 76.) Dr. Shah stated in his deposition that he would have liked to have known about these symptoms on April 8, and that it was the fault of the nurses that he did not. (*Id.* at 77.) He says that he would have reexamined the patient. (*Id.*) The nurses, however, state that Dr. Shah did review the nursing notes on April 8 while Plaintiff was in the waiting room; and that they requested that Dr. Shah examine Plaintiff that day since his condition

had not improved. (Answer and Objections to Plaintiff's First Interrogatories and Fifth Request for Production of Documents to Defendants Nancy Harrington and Patricia Damiano, at 5–6; Supplement to Answers and Objections to Plaintiff's First Interrogatories and Fifth Request for Production of Documents to Defendants Nancy Harrington and Patricia Damiano, at 2–3.) [Doc. 50] According to the nurses, Dr. Shah refused to do so, saying there was "no need." (*Id.*) Dr. Shah in his deposition admitted that if he had examined Plaintiff that day and his leg was cool to the touch or he was complaining of throbbing, Dr. Shah would have sent him to the emergency room or a vascular specialist.

On April 9, Plaintiff submitted another request for medical care, complaining of calf burning, a swollen foot, toes burning, and requesting pain medication. At 3:30 p.m. that afternoon, Deputy Tullis, an emergency medical technician, checked Plaintiff's leg at Nurse Harrington's request and indicated that the foot appeared to be in the same poor condition as the previous night. Dr. Shah says this request was never brought to his attention until April 13. Nurse Harrington, however, says that she reported the information from Deputy Tullis to Dr. Shah, who responded "that the foot and leg is going to look like this and it's going to have some tingling or burning." (Deposition of Nancy Harrington, at 143–44, 152–53.) Nurses at the jail continued to monitor Plaintiff's leg that evening and into the next day.

On the afternoon of April 10, Nurse Harrington was contacted by Lieutenant Skinner, who informed her that he had seen Plaintiff's foot and it looked like "death." Nurse Harrington called Dr. Shah to inform him of Plaintiff's condition,

and Dr. Shah ordered that Plaintiff be transferred to the emergency room. Plaintiff was taken to Douglas County Hospital around 2:40 p.m. on April 10 and received the analgesic medication Nubain. He was then transferred to Cobb General Hospital, where he was seen by a physician sometime around 7:00 p.m. Thrombolytic therapy by urokinase infusions was begun to stimulate additional blood flow to the muscles in Plaintiff's leg. The next day, April 11, Plaintiff underwent a fasciotomy (an incision of the fascia, the fibrous tissue surrounding the muscles). Ultimately, he underwent a transmetatarsal amputation (the horizontal cutting away of the toes and the upper part of the foot) of his left leg. Plaintiff remained at Cobb General until he was transferred to Augusta State Medical Prison.

Plaintiff filed suit in the State Court of Cobb County against Douglas County, Sheriff Tommy Waldrop, Dr. Shah, Dr. Saurabh D. Desai, and Nurses Patricia Damiano and N. Harrington. The action was removed to this Court. Plaintiff has voluntarily dismissed his suit against Douglas County, Sheriff Waldrop, and Nurses Damiano and Harrington pursuant to a settlement agreement. Only the claims against Drs. Shah and Desai remain pending. Dr. Shah has filed a Motion for Partial Summary Judgment, seeking summary judgment on the Section 1983 claims that Plaintiff has asserted against him for allegedly violating his Eighth Amendment rights.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and

that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

■ Defendant Shah seeks summary judgment on the claims that Plaintiff has asserted against him pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for persons whose rights under the federal constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To establish a Section 1983 violation, Plaintiff must show (1) conduct committed by a person acting under color of state law (2) that deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Duke v. Massey,* 87 F.3d 1226, 1231 (11th Cir.1996).

■ Plaintiff alleges that Dr. Shah violated his right to be free of "cruel and unusual punishment" as protected by the Eighth Amendment to the Constitution of the United States.[1] For Plaintiff to withstand Dr. Shah's Motion for Summary Judgment on the Section 1983 claims, he must allege acts or omissions showing that Dr. Shah acted with "deliberate indifference" to his medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The meaning of the term "deliberate indifference" was further clarified by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a case that considered its meaning with reference to a prison's duty to protect its inmates from violence at the hands of other inmates. In *Farmer,* the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837, 114 S.Ct. 1970. However, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm actually would befall an inmate; it is enough that the official acted or failed to act despite his

---

1. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. It applies to the states and their political subdivisions through the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.*

■ Accordingly, under *Estelle* and *Farmer*, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. Summary judgment must be granted for the defendant official unless the plaintiff presents evidence of the official's subjective knowledge. "[S]ince a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir.1999) (quoting *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir.1996) (citations omitted)); *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999). In addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment and defeat a prison official's motion for summary judgment.

■ The Eleventh Circuit's cases have given substance to *Estelle's* distinction between "deliberate indifference" and mere negligence, explicating categories of action or inaction that may constitute deliberate indifference. The Eleventh Circuit has re-peatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 (11th Cir.1997); *see also Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir. 1994); *Brown v. Hughes,* 894 F.2d 1533, 1537–39 (11th Cir.1990). The Eleventh Circuit also has held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. *Steele v. Shah,* 87 F.3d 1266, 1269–70 (11th Cir.1996); *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir.1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel,* 888 F.2d at 789; *accord Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir.1985).

■ The defense of qualified immunity is not available to a defendant guilty of deliberate indifference to serious medical needs. It is well settled that the "deliberate indifference" to the serious medical needs of a detainee violates clearly established law. *Harris v. Coweta County,* 21

F.3d 388, 393 (11th Cir.1994); *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 (11th Cir.1997); *see also Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989) ("This court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference."). "[D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. 285 (quoting *Gregg v. Georgia,* 428 U.S. 153, 182–83, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105, 97 S.Ct. 285. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. 285. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

■ After careful review of the records, documentary and testimonial evidence, the Court concludes that Plaintiff has established a triable Section 1983 claim against Dr. Shah. It is undisputed that Plaintiff had a serious medical condition that was in need of treatment. "Whether each of the defendants had the requisite knowledge of the seriousness of [the plaintiff's] medical needs is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1426 (11th Cir.1997). The evidence in this case when viewed in the light most favorable to Plaintiff creates a genuine issue of material fact as to whether Dr. Shah was deliberately indifferent to Plaintiff's medical needs.

First, Plaintiff has established that the alleged deprivation was sufficiently serious. Plaintiff has alleged that because of the inadequate medical care that he received he suffered severe pain for four days and ultimately required surgery and a transmetatarsal amputation of his left leg. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999) ("Our cases, too, have recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain.") Second, Plaintiff has provided evidence that Dr. Shah was aware of the risk of harm to Plaintiff and nevertheless disregarded that risk. Plaintiff has alleged more than mere medical negligence. Plaintiff has testified that Dr. Shah did not even physically examine him on April 7, and Nurses Harrington and Damiano cannot recall that he actually did so. Dr. Shah knew of Plaintiff's previous vascular problems, but did not schedule a follow-up appointment until six days later. Nurses Harrington and Damiano have stated that the next day Plaintiff's condition had not improved and that they asked Dr. Shah to see Plaintiff who was in the nearby waiting room. According to their testimony, Dr. Shah refused to do so, offhandedly dismissing their request by saying that there was "no need." Nurses Harrington and Damiano also have testified that Dr. Shah signed off on their nursing notes showing Plaintiff's deteriorating condition, and the notes contain Dr. Shah's initials. Although Dr. Shah states that he did not sign the notes

that day, the nurses' testimony creates a jury issue as to whether or not he did. Dr. Shah admits that the notes themselves raise a strong inference that Plaintiff should have been sent to the emergency room that day. Nurse Harrington claims that the next day, April 9, she again requested that Dr. Shah examine patient, but Dr. Shah refused by saying that some tingling was to be expected with the medication. Only the next day—after at least four colleagues at the jail (Nurse Harrington, Nurse Damiano, Deputy Tullis, and Lieutenant Skinner) had voiced concerns about Plaintiff's condition—did Dr. Shah finally authorize Plaintiff's transportation to the emergency room. The alleged omissions by Dr. Shah in the face of his knowledge of Plaintiff's vascular history and colleagues continually informing him that Plaintiff's condition was unimproved and he was in severe pain raise a jury issue as to whether or not he knowingly disregarded a serious medical risk and was deliberately indifferent to Plaintiff's medical needs.

 The Supreme Court has emphasized that mere negligence in providing medical treatment or a difference of medical opinion does not give rise to an Eighth Amendment claim, and medical malpractice does not become a constitutional violation simply because the victim is incarcerated. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). It is also true, however, that the nature of our prison system is such that an inmate cannot transport himself outside the confines of the facility to see a doctor whenever he believes he needs treatment. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir.1989) (quoting *Estelle,* 429 U.S. at 103, 97 S.Ct. 285). Consequently, a constitutional obligation exists to provide adequate medical care to those incarcerated. *Id.* Plaintiff in this case has raised a triable issue that Dr. Shah was deliberately indifferent to his medical needs. Consequently, Dr. Shah's Motion for Partial Summary Judgment on the Section 1983 claims must be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant Shah's Motion for Partial Summary Judgment [Doc. 38] is DENIED. The remaining parties to this action are DIRECTED to file the pretrial order within 30 days of the docketing of this Order. This case will be placed on the Court's June 2001 trial calendar.