[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11906
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00065-WS-EMT


JOSEPH N. MONTELEONE,

                                        Plaintiff - Appellant,

versus

CORIZON,
Contracted Medical Company,
JORGE ALVAREZ,
Dr. Chief Health Officer,
MICHAEL JOHNSON,
Dr. Region 1 Medical Director,

                                        Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 20, 2017)

Before HULL, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

Joseph Monteleone, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of Dr. Jorge Alvarez and Corizon Health Care Services on his Eighth Amendment claim, filed pursuant to 42 U.S.C. § 1983.[1] The district court concluded that Mr. Monteleone failed to establish a genuine issue of material fact regarding whether Dr. Alvarez and Corizon acted with deliberate indifference toward his serious medical need.  After review of the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.  We review the facts in the light most favorable to Mr. Monteleone.  *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001).

Mr. Monteleone has a history of chronic back pain, consisting of degenerative disk disease, spinal stenosis, and compressed disks with sciatica nerve pain.  During his incarceration at the Apalachee Correctional Institution, Mr. Monteleone had previously received orthopedic boots, medical passes for a

---

[1] Mr. Monteleone originally brought this action against Dr. Alvarez, Corizon, and Mr. Michael Johnson (Corizon's executive medical director), but he voluntarily dismissed the action against Mr. Johnson because he did not make decisions regarding his medical care.

lower bunk, and medical passes excusing him from prolonged standing, pushing, pulling, or lifting.  Mr. Monteleone was also prescribed Neurontin to treat his pain.

In November of 2013, ACI's medical director, Dr. Alvarez, discontinued Mr. Monteleone's prescription for Neurontin because he received directions from Corizon, ACI's medical services provider, to discontinue its use for neuropathic pain.  According to Dr. Alvarez, Neurontin was discontinued for all patients experiencing neuropathic pain because "scientific studies showed it to be no more effective than a placebo . . . [and] Neurontin is a drug that can be abused."  Alvarez Aff., D.E. 22-2, at 17.  Dr. Alvarez also recognized that although Neurontin has not been approved by the FDA as a treatment for neuropathic pain, in some instances, "it is appropriate and within the standard of care . . . to use drugs for the treatment of conditions for which they have not received FDA approval." *Id.*

After Dr. Alvarez discontinued prescribing Neurontin, Mr. Monteleone submitted a sick call because of sharp shooting pains in his lower back that extended down the back of his left leg.  Despite his requests for Neurontin, Mr. Monteleone was informed that he would no longer receive the medication.  As a substitute, Dr. Alvarez prescribed Naproxen for Mr. Monteleone's pain.

Mr. Monteleone continued to submit sick call requests for pain and stated that Naproxen did not alleviate his symptoms.  In February of 2014, Dr. Alvarez submitted a request for Mr. Monteleone to receive an MRI, which could then be

3

evaluated by an orthopedic or neurological specialist. Corizon did not authorize the request and instead recommended physical therapy. Dr. Alvarez did not believe an MRI was medically indicated, and he did not appeal Corizon's decision because he thought an appeal would be unsuccessful. Dr. Alvarez admitted, however, that he must have "mistakenly failed to enter an order for in house physical therapy." D.E. 22-2 at 24.

Mr. Monteleone also requested "comfort boots" for his pain, but Dr. Alvarez denied that request because he did not qualify for the boots under Corizon's policy. In May of 2014, Dr. Alvarez renewed Mr. Monteleone's medical pass for restricted activity, but determined that Mr. Monteleone did not meet Corizon's criteria for a low bunk pass.

Mr. Monteleone then filed a § 1983 action against Dr. Alvarez and Corizon, asserting that they were deliberately indifferent to his chronic back pain, and violated his Eighth Amendment rights. After discovery, the district court granted summary judgment in favor of the defendants. In reaching its decision, the district court adopted a magistrate judge's report and recommendation, and determined that there was no genuine issue of material fact for trial as to whether Dr. Alvarez or Corizon acted with deliberate indifference. The district court explained that although Mr. Monteleone had demonstrated a "serious medical need," Corizon and

4

Dr. Alvarez had "successfully negated the 'deliberate indifference' element" of his § 1983 claim. *See* D.E. 28 at 20. Mr. Monteleone now appeals.

## II

We review *de novo* a district court's grant of summary judgment, applying the same legal standard used by the district court and drawing all factual inferences in the light most favorable to the nonmoving party. *See Johnson*, 263 F.3d at 1242–43. Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because Mr. Monteleone is a *pro se* litigant, his pleadings are liberally construed and "held to a less stringent standard than pleadings drafted by attorneys." *See Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991) (internal citation omitted).

## III

The Eighth Amendment prohibits "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To state a cognizable claim under § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Specifically, a plaintiff must establish "(1) a serious medical need;

5

(2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307 (citations omitted).

Once a serious medical illness or injury has been established, a plaintiff must show that a defendant acted with deliberate indifference to that need. To establish deliberate indifference, a plaintiff must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Some examples of deliberate indifference include providing "grossly inadequate care[,] . . . [deciding] to take an easier but less efficacious course of treatment, [or providing treatment] . . . so cursory as to amount to no treatment at all." *Id.* A delay in necessary treatment for non-medical reasons may also establish deliberate indifference if the plaintiff provides evidence that "a delay in treating the need worsen[ed] the condition." *See Mann*, 588 F.3d at 1307. But mere evidence of negligence "in diagnosing or treating a medical condition" or a showing of medical malpractice does not establish deliberate indifference. *See Estelle*, 429 U.S. at 106. In sum, "[m]edical treatment violates the [E]ighth [A]mendment only when it is

'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

Mr. Monteleone argues that the district court erred in granting summary judgment in favor of Dr. Alvarez and Corizon because he demonstrated that Dr. Alvarez provided only cursory treatment that did not adequately treat his condition, that Dr. Alvarez persisted with treatment even though he knew it was ineffective, that Dr. Alvarez took too long to offer an alternative treatment, and that Corizon's policies interfered with Mr. Monteleone's ability to receive proper care. Viewing the facts in the light most favorable to Mr. Monteleone, we, like the district court, accept that Mr. Monteleone's degenerative disk disease, spinal stenosis, and compressed disks with sciatica nerve pain, constitute a serious medical need. *See Mann*, 588 F.3d at 1307. Mr. Monteleone has not established, however, that Dr. Alvarez and Corizon were deliberately indifferent to that serious medical need.

## A

Mr. Monteleone's first argument is that Dr. Alvarez acted with deliberate indifference by providing "cursory treatment . . . that did nothing for [his] condition and left him in pain." Appellant's Br. at 10. The parties do not dispute that Dr. Alvarez discontinued Mr. Monteleone's prescription for Neurontin in

7

November of 2013 and that he later prescribed Naproxen.  Mr. Monteleone says that by prescribing Naproxen, Dr. Alvarez provided ineffective treatment and because he repeatedly notified him of the medication's ineffectiveness, Dr. Alvarez's persistence with that treatment constituted deliberate indifference.

To support this argument, Mr. Monteleone points to *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), for the proposition that "deny[ing] reasonable requests for medical treatment" and thereby "expos[ing] the inmate 'to undue suffering or the threat of tangible residual injury'" is a constitutional violation.  In *Spruill*, the Third Circuit allowed deliberate indifference claims against two doctors to continue past the motion to dismiss stage because the prisoner's complaint included allegations that the doctors refused to evaluate him on multiple occasions and that the doctors' indifference was compounded by "malicious and sadistic" behavior.  *See id.* at 237.  *Spruill* is distinguishable because Mr. Monteleone was evaluated by Dr. Alvarez or the nursing staff each time he submitted a sick call request, and he has not demonstrated (or even alleged) that Dr. Alvarez discontinued his preferred medication for "malicious or sadistic" reasons.  Instead, Dr. Alvarez discontinued Mr. Monteleone's prescription because

of directions he received from Corizon and because scientific studies have shown that Neurontin is not appropriate for Mr. Monteleone's condition.[2]

Mr. Monteleone also relies on our decision in *Steele v. Shah*, 87 F.3d 1266, 1270 (11th Cir. 1996), to highlight that grossly inadequate care or a doctor's decision to take "an easier but less effective course of treatment" can establish deliberate indifference. In *Steele*, we reversed a grant of summary judgment in favor of a doctor because a prisoner had provided evidence establishing a lack of adequate medical attention. *See id.* at 1268. We noted that a psychiatric nurse notified the medical staff in *Steele* that the prisoner "had a history of suicide attempts, and was [ ] considered a potential suicide risk," but the doctor chose not to evaluate the patient right away or provide the previously-prescribed psychotropic medications or an alternative medication. *See id.*

Unlike the plaintiff in *Steele*, Mr. Monteleone received medical attention each time he submitted sick calls and he later received an alternative medication. Mr. Monteleone's claim that the new medication was ineffective is different from the urgent psychiatric needs of the plaintiff in *Steele*, who was considered a potential suicide risk. Although Dr. Alvarez' failure to substitute a more effective medication may constitute negligence, it does not rise to the level of deliberate indifference. *See Harris v. Thigpen*, 941 F.2d at 1505–07 (explaining that

---

[2] The record also indicates that a nurse offered Mr. Monteleone over-the-counter medications and topical balm to help alleviate his pain, but that he refused to take them. *See* D.E. 22-2 at 4.

9

substantial medical mismanagement and delays in substituting effective advanced-stage HIV treatment did not "manifest the kind of 'conscious or callous indifference' necessary to raise . . . negligent care . . . to violations of a constitutional magnitude").   In other words, Mr. Monteleone has not provided evidence showing that Dr. Alvarez had substantial knowledge of a risk of serious harm to Mr. Monteleone if he did not receive successful treatment for his chronic back pain.  *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2016).  Moreover, determining which medication to prescribe is generally a matter of medical judgment, and Mr. Monteleone was required to do more than question Dr. Alvarez' medical judgment to overcome a summary judgment ruling on his § 1983 claim.  *See, e.g.*, *Estelle*, 429 U.S. at 107 (explaining that a dispute over medical judgment is not enough to establish a constitutional violation).

Mr. Monteleone's second argument is that Dr. Alvarez failed to examine him in a timely manner and did not immediately prescribe a different medication or treatment after discontinuing Neurontin.  The parties agree that Mr. Monteleone had to submit multiple sick calls and that it took over two weeks for Dr. Alvarez to prescribe a different medication.  In arguing that "a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours," *see* Appellant's Br. at 15, Mr. Monteleone's reliance on our decision in *Harris v. Coweta Cty.*, 21 F.3d 388 (11th Cir. 1994), is

misplaced.  In *Harris*, we noted that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."  *Id*. at 393–394.  The panel affirmed the district court's decision to set aside a prison officer's qualified immunity in that § 1983 case because it reasoned that "several weeks was too long to fail to properly respond to the medical need" of a prisoner whose fingernails were growing into his palm.  *Id.* at 394.

Although we recognize the seriousness of Mr. Monteleone's medical condition, the record does not support a finding that the two-and-a-half week delay here was enough to establish a constitutional violation because Mr. Monteleone has not provided evidence demonstrating that if left unattended, his back pain "pose[d] a substantial risk of serious harm."  *See id*. at 393 (reasoning that "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner'").  *See also Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (explaining that violations of professional standards are only a "starting point for [an] analysis that requires much more than negligence or malpractice").[3]

**B**

---

[3] Dr. Alvarez's mistake in failing to submit the order for physical therapy—and the 10-month delay that followed—is a closer question, but Mr. Monteleone has not focused his argument on appeal on this issue.  Moreover, Mr. Monteleone has not made an attempt to contradict Dr. Alvarez' position that it was a mistake (and not a conscious, deliberate act), and he has not placed medical evidence in the record to demonstrate that the delay worsened his condition. *See Mann*, 588 F.3d at 1307 (explaining that "the medical need must be one that, if left unattended, poses a substantial risk of serious harm") (citation omitted).

11

Mr. Monteleone's final argument is that Corizon's "policies, practices, and procedures . . . interfered with already prescribed treatment," including the Neurontin prescription, issuance of medical passes, physical therapy, and orthopedic boots.  Appellant's Br. at 12–13.  Mr. Monteleone also contends that Corizon's policies were motivated by cost-cutting techniques and interfered with his ability to consult with an orthopedic specialist and receive treatments such as surgery or cortisone shots.

Generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'"  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation omitted).  We have extended that rule to private corporations like Corizon.  *See, e.g.*, *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011).  To hold a defendant liable as a supervisory official, a plaintiff must show that "the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."  *Hartley*, 193 F.3d at 1269.

Corizon's decision to discontinue Neurontin for neuropathic pain was based on scientific studies that showed it to be no more effective than a placebo.  Additionally, the FDA has not approved the medication for that condition.  Although some doctors prescribe Neurontin to treat neuropathic pain, Corizon's

12

decision to discontinue it does not rise to the level of deficient care necessary to establish deliberate indifference under § 1983.  *See McElligott*, 182 F.3d at 1256 (describing the difference between negligent care and "knowingly provid[ing] grossly inadequate" care).

Even though Corizon's policies may have prevented Mr. Monteleone from getting an MRI or seeing an orthopedic surgeon, the Supreme Court has held that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment . . . [and] [a]t most it is medical malpractice." *Estelle*, 429 U.S. at 107.[4]

In *Estelle*, a prisoner also suffered from back pain and "contend[ed] that more should have been done by way of diagnosis and treatment."  *See id.*  The prisoner's claim in *Estelle*—like Mr. Monteleone's claim that Corizon's policies should have allowed for better treatment options like surgery, medical passes, boots, and physical therapy—was not cognizable under § 1983 because evidence of medical malpractice alone is not sufficient for a constitutional violation.  *See id.* at 106.  Mr. Monteleone has not demonstrated that there was a constitutional violation in this case, thus, he cannot establish that Corizon participated in or caused such a violation.  *See Hartley*, 193 F.3d at 1269 (noting that a causal

---

[4] Dr. Alvarez also agreed that, in his medical opinion, an MRI and orthopedic evaluation for surgery was not medically indicated in this case.

13

connection may exist where a supervisor is put "on notice of the need to correct the alleged deprivation, and [ ] fails to do so").

## IV

Because Mr. Monteleone has not provided evidence establishing that Dr. Alvarez and Corizon acted with deliberate indifference to his medical condition, we affirm the district court's grant of summary judgment.

**AFFIRMED.**

14