[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10867
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-01813-AT


PABLO F. MALDONADO,

Plaintiff-Appellant,

versus

UNNAMED DEFENDANT,
CORPORAL JEFFERSON,
individually and in his official capacity as an employee
of the Newton County Sheriff's Department,
JAILER CARTER,
individually and in his official capacity as an employee
of the Newton County Sheriff's Department,
JAILER BROWN,
individually and in his official capacity as an employee
of the Newton County Sheriff's Department,
JAILER ELLIS,
individually and in his official capacity as an employee
of the Newton County Sheriff's Department, et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————

(April 26, 2016)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Pablo F. Maldonado, a Georgia death-row inmate proceeding pro se, appeals the district judge's granting summary judgment to the Newton County Sheriff's Department defendants on his 42 U.S.C. § 1983 complaint. We affirm in part, vacate in part, and remand.

## I.  BACKGROUND

A.    Facts

On August 31, 2012, Maldonado was convicted in Georgia state court of malice murder, felony murder, armed robbery, concealing the death of another, and forgery; he was sentenced to death. Maldonado currently is confined at the Georgia Diagnostic and Classification Prison, to which he was transferred on September 7, 2012. From June 15, 2009, through September 7, 2012, Maldonado was detained at the Newton County Detention Center ("NCDC"). This § 1983 action relates to Maldonado's pretrial confinement at the NCDC, during which time he claims corrections officers retaliated against him, were deliberately

indifferent to his serious medical needs, and committed various other wrongs against him.

1.    Retaliation Claims

In his complaint, Maldonado alleged Officer First Name Unknown ("FNU") Myrie assaulted him various times between June and July 2010. Maldonado explained at his deposition this allegation referred to an incident that occurred on June 26, 2010, when Officer Myrie, at the direction of Officer Keith Brown, who was in the control tower, assaulted him as he was coming out of visitation. Subsequently, Maldonado was taken to intake to be placed on suicide watch and allegedly was denied medical treatment by Lieutenant Selena Williams. In an inmate-grievance form dated June 29, 2010, Maldonado complained he had been removed to suicide watch for no apparent reason after being assaulted by Officer Myrie and stated Officer Brown had confiscated his personal-hygiene items and law books.

Maldonado's jail medical file showed he was seen by a nurse on June 26, 2010, at the request of Lieutenant Williams. Maldonado complained his right shoulder had been dislocated, although he was able to pull his shirt over his head, move both arms easily, and unsnap his uniform. Maldonado also stated an officer had choked him, but no swelling or discoloration was noted around his throat. He had reddened areas on both shoulders and his head, and medical personnel directed

3

officers to give him ice for his injuries. Maldonado was examined again on June 29 and 30, 2010, after complaining of pain in his right shoulder, which was bruised and slightly swollen. Medical staff provided Maldonado over-the-counter medication for his pain and recommended an ice pack.

On July 12, 2010, Maldonado argued with Officer Novel Ellis after she accused him of taking another inmate's laundry bag. Sergeant Clarence White and another officer, who is not a defendant in this action, escorted Maldonado first to disciplinary segregation and then to a cell in the medical unit. While he was in the medical unit, Maldonado states Sergeant White came into his cell, threw him to the ground, and said something like "you won't put my name in a lawsuit"; Sergeant White then tased Maldonado on the left side of his face. R. at 1124.

Maldonado was examined by prison medical staff following this incident, and complained to the nurse that he had been tased in the face. The nurse noted redness on the left side of Maldonado's face but concluded it did not require any treatment. Maldonado did not file an inmate-grievance form concerning this incident.

On July 29, 2010, Maldonado posted a note on his cell door asking to be left alone; it stated he had enough commissary items to last him for several weeks. Lieutenant Williams and Corporal George Jefferson went into Maldonado's cell; Jefferson restrained Maldonado while Williams removed his personal items.

4

Williams reportedly said something like "let's see how you are going to survive without your commissary." R. at 142, 1130. In an undated letter addressed to Lieutenant FNU Goodman, who is not a defendant in this action, Maldonado listed a number of items that allegedly were taken from his cell, when he was removed from Seg-1, his regular housing unit, on July 12, 2010. On July 29, 2010, Maldonado filed an inmate request form and asked to speak to Lieutenant Goodman about officers taking his personal items in retaliation for grievances he had filed. He again requested the replacement of his personal items in an inmate-request form dated September 13, 2010. At the bottom of that form, Lieutenant Goodman noted the items were replaced on September 14, 2010. In a memorandum dated September 14, 2010, and addressed to Maldonado, Lieutenant Goodman listed the items Maldonado had received, and Maldonado signed at the bottom, acknowledging receipt of those items.

On August 9, 2010, Sergeant White, on the orders of Captain Sammy Banks, attempted to place Maldonado in disciplinary segregation, allegedly for no apparent reason. Maldonado refused to go to disciplinary segregation; instead, he was placed on suicide watch against his will. Because Maldonado did not voluntarily remove his clothing, Sergeant White and Corporal Jefferson undressed him and put him in a suicide suit. Maldonado was "manhandled" by the officers

5

during this process, but he did not suffer any physical injuries.  R. at 1152.  He did not file a grievance concerning this incident.

On September 2, 2010, Captain Banks and Officer Brice Smith ordered Maldonado to be placed in disciplinary segregation with a convicted murderer, armed robber, and drug trafficker, allegedly for discriminatory and retaliatory reasons.  Maldonado did not file a grievance concerning this incident.

On September 20, 2010, Sergeant Freeman Moody ordered Maldonado to get out of the shower.  Maldonado did not comply immediately and told Moody he needed to finish rinsing off.  Moody allegedly then dragged Maldonado out of the shower and pushed him into his cell, causing Maldonado to slip and hurt his back.  Maldonado began swearing at Moody and spit on the window of his cell door.  Moody told Maldonado he was going to file disciplinary charges against him.  Maldonado did not file a grievance concerning this incident.

On December 23, 2010, after being threatened by another inmate, Maldonado jammed the door to his cell.  Jail staff removed the door, and Officers Joe Maher and Wesley Ramsey removed Maldonado from his cell.  Officers Maher and Ramsey told Maldonado they were taking him to suicide watch, but Maldonado insisted he was not suicidal and refused to put on a suicide suit.  Officers Maher and Ramsey then placed Maldonado in a restraint chair with both his hands and feet restrained.  According to Maldonado, once he was in the

6

restraint chair, Officers Maher and Ramsey told him to "drop [their] name from any lawsuit" he had filed and threatened he would "regret bringing their name in any type of lawsuit"; they then broke his left pinky finger, kicked him, and burned him with a lighter. R. at 1179-80. On December 27, 2010, Maldonado filed an inmate-grievance form and complained he was taken to intake on December 23, 2010, to be placed on suicide watch, even though he was not suicidal; thereafter Officers Maher and Ramsey placed him in the restraint chair, beat him, tortured him, and burned him with a lighter.

At approximately 1 a.m. on December 24, 2010, after Maldonado had been placed in the restraint chair, a nurse was called to examine him. Maldonado told the nurse officers had hit him in the head, kicked him in the ribs, and broken his finger. The nurse noted Maldonado was able to move his fingers without any problem, but could not flex his left index finger, which was swollen. The nurse checked on Maldonado again at 2:30 a.m. and noted his left index finger was slightly discolored. The following day, Maldonado complained his left wrist was broken, but the nurse noted no swelling or discoloration. On December 27, 2010, an x-ray was taken of Maldonado's left wrist, which revealed no abnormality or fracture.

On May 26, 2011, Maldonado came out of his cell and asked to speak to a supervisor or internal-affairs investigator to make a complaint about an officer who

was harassing him sexually. Officers told Maldonado to lock down in his cell, but Maldonado refused to do so until he had spoken to a supervisor. Corporal Maurice Kennard escorted Maldonado back into his cell. Maldonado was not combative, but once inside the cell, "a few words [were] said," and Corporal Kennard pepper-sprayed Maldonado in the face. R. at 1201. After the incident, Sergeant White allegedly went into Maldonado's cell and threatened him to stop pursuing lawsuits or internal investigations against the officers. A nurse examined Maldonado in his cell after he was pepper-sprayed; Maldonado then showered to wash off the pepper spray. The following day, May 27, 2011, Maldonado filed a grievance asserting the pepper-spray incident was in retaliation for his attempt to make a sexual harassment complaint.[1]

On August 8, 2011, Corporal Kennard and Officer Brown allegedly attacked Maldonado in his cell after Maldonado accidentally broke a TV remote control, when he tossed it. According to Maldonado, the officers punched him, slammed him on the floor, and broke his tooth. Following this incident, medical personnel were called to examine Maldonado. The nurse noted Maldonado's forehead and right ear were red, and he had an abrasion on his left elbow, but he did not have any severe injuries. From August 9 through 16, 2011, medical staff checked on

---

[1] In his complaint, Maldonado alleged Sergeant Octavis Campbell had harassed him sexually and would retaliate against him if he refused to comply with her demands. He also alleged Campbell had denied him access to the prison mail system. At summary judgment, with Maldonado's consent, the district judge dismissed Campbell as a defendant for lack of service; Maldonado does not challenge that decision on appeal.

Maldonado daily. They also checked on him on August 19 and 22, 2011, and daily on August 24 through 30, 2011. Maldonado did not complain to medical staff during those visits. On August 10, 2011, Maldonado filed an inmate request form and complained he had been punished and beaten for "a remote control that came apart & for not cleaning up." R. at 1435.

Finally, according to Maldonado, on August 12, 2011, Lieutenant Williams and Sergeant Smith trashed his cell and disposed of $100 worth of commissary items and half of his discovery from his criminal case. Between August 8 and 14, 2011, Maldonado filed several requests seeking the return of his discovery material and commissary items. The response on the form dated August 14, 2011, shows Maldonado's property had been returned.

2.    Deliberate Indifference Claims

In his complaint, Maldonado generally alleged he had been denied medical attention for his serious health issues between June and October of 2011. At his deposition, Maldonado testified his deliberate-indifference claim was based on the June 26, 2010, July 12, 2010, December 23, 2010, and May 26, 2011, incidents previously described. Maldonado did not file any grievances concerning any deprivation or delay of medical treatment.

3.    Other Claims

9

Maldonado also alleged officers failed to protect him from being attacked by his former cellmate, Joseph White, on July 3 and 10, 2010. Maldonado represents White had assaulted him both physically and sexually on several prior occasions. Maldonado had reported those incidents to corrections officers and requested his visitation schedule be changed, so it would not overlap that of White, but officers failed to take any action. On July 3, 2010, while Maldonado was waiting for visitation, White attacked him. Maldonado reported the assault to Officer Ellis, who simply told the two men they needed to work out their problems. On July 10, 2010, Maldonado's visitation schedule had not been changed, and White again assaulted Maldonado.

In addition, Maldonado generally alleged Lieutenant Williams, Sergeant Smith, and Captain Banks had denied him access to the law library, clergy visits, and religious materials. In particular, on August 17, 2010, Captain Banks denied Maldonado access to the law library and clergy visits, while he was being held in a video-monitored intake cell after being released from suicide watch. Maldonado also claimed Sergeant Smith had denied him a refund for store goods that had been lost by jail custodians on May 31, 2011, and alleged a jail-staff member, Mrs. Oliver, who is not a defendant in this action, had tampered with his mail.

B.    District Court Proceedings

10

Maldonado initiated this action in June 2011 by filing in the district court a letter, challenging the conditions of his pretrial confinement in the NCDC. His previously filed complaint, raising similar issues regarding his confinement at the NCDC, had been dismissed for failure to state a claim on June 17, 2010. The district judge had directed Maldonado to file an amended complaint limited to any alleged violations of his rights that had occurred after dismissal of his prior suit. Maldonado complied and filed a second amended complaint ("SAC"), which is the operative complaint in this case. Maldonado also moved for appointment of counsel and asserted he could not afford an attorney and was unable to represent himself effectively.

In his SAC, Maldonado named as defendants Newton County, the Newton County Sheriff's Office, Sheriff Ezell Brown, and numerous individual corrections officers. He alleged nine counts: (1) violation of his First, Fourth, Eighth, and Fourteenth Amendment rights against Newton County (Count I); (2) violation of his First, Fourth, Eighth, and Fourteenth Amendment rights against the individual defendants (Count II); (3) assault and battery against Officers Joe Maher, Wesley Ramsey, Keith Brown, and inmate Joseph White (Count III); (4) intentional infliction of emotional distress, apparently against all of the individual defendants (Count IV); (5) negligent retention against Newton County (Count V); (6) violation of his civil rights under 18 U.S.C. § 241 against Newton County (Count VI);

11

(7) violation of his civil rights under 18 U.S.C. § 241 against the individual defendants (Count VII); (8) violation of his civil rights under 18 U.S.C. § 242 against Newton County (Count VIII); and (9) violation of his civil rights under 18 U.S.C. § 242 against the individual defendants (Count IX).

The district judge screened Maldonado's complaint under 28 U.S.C. § 1915A. On September 27, 2012, the judge issued an order dismissing all of Maldonado's claims except his § 1983 deliberate indifference and retaliation claims against the individual officers and his state-law claims against inmate Joseph White.[2] The judge also denied Maldonado's motion for appointment of counsel, subject to reconsideration at a later time, because the facts were not sufficiently substantiated at that time to warrant appointment of counsel.[3] On January 8, 2013, Maldonado filed an untimely motion for reconsideration of the screening order and sought reinstatement of Counts II (§ 1983 claim against the individual officers), III (assault and battery), and IV (intentional infliction of emotional distress). The judge denied Maldonado's motion, because it did not warrant reconsideration of the screening order and was untimely.

---

[2] Consequently, the district judge dismissed at the screening stage Maldonado's claims that jail staff had (1) failed to protect him from being attacked by inmate Joseph White on July 3 and 10, 2010, (2) denied him access to the law library and clergy visits on August 17, 2010, (3) denied him a refund for personal goods lost on May 31, 2011, and (4) tampered with his mail. Maldonado does not argue on appeal the judge erred in dismissing these claims.

[3] Maldonado made several subsequent requests for the appointment of counsel, all of which the judge denied.

12

As discovery proceeded, Maldonado moved for appointment of a medical doctor and a psychiatrist to provide expert opinions concerning the physical and mental injuries he had suffered from the defendants' abuses.  A magistrate judge denied Maldonado's motion and concluded Maldonado had not substantiated sufficiently the need for appointment of an expert to ensure a just resolution of his case.  Maldonado later filed a motion to compel discovery and asserted the defendants failed to respond to numerous requests for production of documents and were delaying intentionally disclosure of other requested documents.  While his motion to compel was pending, Maldonado filed a motion for inspection of tangible items and entry upon land and requested permission to enter the NCDC to inspect the premises and to take measurements, photographs, and video.  He represented this evidence was necessary to refute various assertions made by the individual defendants in their responses to interrogatories.

Subsequently, defendants moved for summary judgment.  In relevant part, they argued Maldonado had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), because he did not file any grievances naming any of the individual defendants concerning the issues raised in this case.  The defendants further contended no evidence supported Maldonado's claims of retaliation, and Maldonado would have been disciplined regardless of his protected conduct.  Concerning Maldonado's

13

claim of deliberate indifference regarding his medical needs, the defendants argued the evidence showed Maldonado had received adequate medical care during his incarceration at the NCDC. Finally, they asserted they were entitled to qualified immunity concerning both of Maldonado's claims.

Before responding to the motion for summary judgment, Maldonado renewed his request for appointment of a medical expert and contended he also needed an expert witness to refute the defendants' taser expert. In his response to the motion for summary judgment, Maldonado maintained he did exhaust his available administrative remedies. He asserted he filed grievances concerning some of the issues raised in this lawsuit, but the defendants had prevented him from filing grievances concerning other instances of mistreatment. Under these circumstances, Maldonado contended he should not be penalized for failing to exhaust his administrative remedies, because his failure was caused by the defendants' misconduct.

Concerning his retaliation claims, Maldonado insisted there was a causal connection between the defendants' abuses and his many grievances and legal complaints. He also contested the defendants' assertion he would have been disciplined despite his protected conduct. Maldonado further argued the defendants were not entitled to summary judgment on his deliberate-indifference claims, because he presented evidence showing the defendants denied or delayed

medical treatment.  Finally, he contended the defendants were not entitled to qualified immunity, because he had shown they violated his clearly established constitutional rights.

In support of his response, Maldonado filed a number of documents, including a copy of the NCDC Inmate Handbook, dated January 2009.  The Handbook provided an inmate who wishes to file a grievance must:

a.      Request a grievance form from the security officer.

b.      Write on the grievance form the date and time of the occurrence, and the name of the facility, staff, and inmates involved, and a detailed description of the incident.

c.      A grievance must be submitted within five days of the incident or discovery of the matter being grieved. . . .

R. at 1566.

A magistrate judge issued a final Report and Recommendation ("R&R"), which addressed Maldonado's pending motions as well as the defendants' motion for summary judgment.  As a preliminary matter, the magistrate judge recommended Sergeant Octavis Campbell, Officer FNU Myrie, and inmate Joseph White be dismissed for lack of service.  The magistrate judge then denied Maldonado's motion for entry upon land, because he had not demonstrated the necessary discovery could not be accomplished through other means, and his request was not justified in view of the limitations imposed on him by his

15

incarceration for his capital sentence.  Similarly, the magistrate judge denied Maldonado's motion to compel discovery and found the material Maldonado sought was cumulative, irrelevant, or exceeded the scope of discovery.  For the same reasons, the magistrate judge also denied Maldonado's motion for appointment of an expert witness.

Regarding the motion for summary judgment, the magistrate judge first identified the following incidents of misconduct, alleged in the SAC and permitted to proceed in the screening order, as the basis for Maldonado's § 1983 retaliation claim: (1) the July 12, 2010, taser incident, (2) the July 29, 2010, confiscation of property, (3) the August 9, 2010, move to suicide watch, (4) the September 2, 2010, move to disciplinary segregation, (5) the December 23, 2010, assault by Officers Maher and Ramsey, (6) the May 26, 2011, pepper-spray incident, (7) the August 8, 2011, attack by Corporal Kennard and Officer Brown, and (8) the August 12, 2011, destruction of his property.  Concerning Maldonado's deliberate-indifference claim, the magistrate judge noted the SAC generally alleged deliberate indifference to his medical needs between June and October 2011 but did not identify any specific instances that post-dated the dismissal of his prior suit.

In accordance with our precedent, the magistrate judge construed the motion for summary judgment as a Federal Rule of Civil Procedure 12(b) motion to dismiss in addressing the PLRA exhaustion requirement.  The magistrate judge

16

concluded Maldonado had failed to exhaust his administrative remedies concerning his deliberate-indifference claims and his retaliation claims regarding the incidents on July 12, 2010, August 9, 2010, September 2, 2010, May 26, 2011, August 8, 2011, and August 12, 2011, because he had failed to submit copies of any administrative grievances concerning those claims. The magistrate judge also determined Maldonado did not properly exhaust his claim concerning the December 23, 2010, incident, because his administrative grievance did not state a retaliation claim. Finally, the magistrate judge found Maldonado properly had grieved the July 29, 2010, incident as a retaliation claim but concluded this claim should be dismissed, because the grievance fully was resolved administratively. Consequently, the magistrate judge concluded the defendants were entitled to summary judgment on all of Maldonado's claims.

Maldonado objected to the R&R and contended the magistrate judge had erred in denying his motions to compel and for entry upon land. Regarding the motion for summary judgment, Maldonado contended the magistrate judge had failed to address his claim he was assaulted by Officer Myrie on June 26, 2010, but did not otherwise object to the magistrate judge's recitation of the retaliation claims remaining on summary judgment.[4] Maldonado argued the magistrate judge

---

[4] Aside from the June 26, 2010, claim, Maldonado cannot challenge on appeal the district judge's failure to address other retaliation claims he may have raised that were not discussed in

17

also erred in concluding he had not exhausted his claim concerning the May 26, 2011, incident and directed the judge's attention to the May 27, 2011, grievance he had filed.  Maldonado further asserted his failure to exhaust his other retaliation and deliberate-indifference claims was not his fault, because defendants had prevented him from filing grievances, destroyed his grievances, or failed to investigate them properly.  Finally, Maldonado stated he had no objection to the dismissal of Sergeant Campbell, Officer Myrie, and inmate Joseph White for lack of service.

The district judge adopted the R&R with some modifications and overruled Maldonado's objections.  Because Maldonado did not object to the dismissal of Sergeant Campbell, Officer Myrie, and Joseph White, the district judge adopted the magistrate judge's recommendation those defendants, and Maldonado's claims against them, be dismissed.  The judge concluded the magistrate judge did not clearly err in denying Maldonado's discovery motions and noted Maldonado's objections showed he had sought to use discovery to collect evidence of a pattern of constitutional violations against other prisoners to bolster his own claims, which was inappropriate in this case.  The judge further noted Maldonado did not object

---

the R&R, because he did not object to the omission of these claims in his objections to the R&R. *See* 11th Cir. R. 3-1.

18

specifically to the portion of the magistrate judge's order setting out Maldonado's retaliation claims and adopted that portion of the R&R.[5]

Concerning the exhaustion issue, the district judge agreed the summary judgment motion should be treated as a Rule 12(b) motion. The judge adopted the magistrate judge's conclusion that Maldonado had failed to exhaust his deliberate-indifference claims, because he never properly filed any written grievances raising those claims. Similarly, the judge adopted the R&R conclusions that (1) for the incidents on July 12, 2010, August 9, 2010, September 2, 2010, December 23, 2010, August 8, 2011, and August 12, 2011, Maldonado either did not file grievances or did not assert retaliation claims in his grievances, and (2) Maldonado's grievance concerning the July 29, 2010, incident was resolved fully. Regarding the May 26, 2011, incident, however, the district judge concluded Maldonado had exhausted his administrative remedies. Although not included in his summary judgment filings, Maldonado had attached a grievance form

---

[5] Maldonado did raise a specific objection concerning the magistrate judge's failure to address the June 26, 2010, attack by Officer Myrie. The judge properly dismissed that claim as to Officer Myrie for lack of service. The judge failed to address, however, Maldonado's claims Officer Brown directed Officer Myrie to assault him, and Lieutenant Williams thereafter denied him medical treatment. Nevertheless, we may affirm the district judge's judgment on any ground, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), and the record shows Maldonado did not properly exhaust his claims against Lieutenant Williams and Officer Brown concerning this incident. Maldonado's grievance did not mention Lieutenant Williams or allege any denial of medical treatment; the record shows Maldonado received medical attention on June 26, 2010, at Lieutenant Williams's request. In addition, Maldonado's grievance mentioned Officer Brown only in connection with the confiscation of his property, which did not form a part of his claim in the district court and about which he does not complain on appeal. Maldonado also did not allege Officer Brown was involved in or responsible for the assault by Officer Myrie. Accordingly, these claims properly were dismissed.

concerning the May 26, 2011, incident to an earlier filing; that grievance form specifically accused Corporal Kennard and Sergeant White of retaliating against him.

Nevertheless, the judge concluded dismissal of all of Maldonado's § 1983 claims was warranted on qualified immunity. The judge stated it was "undisputed that the Individual Officers were acting within the scope of their discretionary authority at the time of the alleged violations." R. at 2009-10. Consequently, Maldonado bore the burden of showing the officers had violated his clearly established constitutional rights. The district judge stated Maldonado had made no effort to satisfy that burden in either his response to the motion for summary judgment or his objections to the R&R and concluded Maldonado could not have shown his rights were clearly established. Concerning the May 26, 2011, incident, the judge explained Maldonado's deposition testimony showed he had failed to comply with officers' orders. Therefore, the evidence was insufficient for the judge to conclude Corporal Kennard had pepper-sprayed Maldonado for punitive purposes rather than to induce compliance with a lawful order. Furthermore, Maldonado did not respond to the qualified-immunity defense at all, much less provide the judge with any "controlling and materially similar case" demonstrating the use of pepper spray to obtain compliance with a lawful order was unconstitutional. Consequently, the judge concluded the individual defendants

20

were entitled to summary judgment regarding the May 26, 2011, incident based on

qualified immunity.  The judge further noted qualified immunity would bar all of

Maldonado's § 1983 claims, because of his failure to respond to that defense.

Therefore, the judge adopted the R&R and granted the individual defendants'

motion for summary judgment.[6]

## II.  DISCUSSION

A.    Exhaustion of Administrative Remedies

On appeal, Maldonado argues the district judge erroneously construed the

exhaustion portion of the motion for summary judgment as a Rule 12(b) motion.

He also contends the defendants waived their failure-to-exhaust defense by their

affirmative misconduct, asserts the defendants failed to prove that defense, and

argues he demonstrated a genuine issue of fact concerning the availability of

administrative remedies.

We review de novo a district judge's application of 42 U.S.C. § 1997e(a),

the PLRA exhaustion requirement.  *Higginbottom v. Carter*, 223 F.3d 1259, 1260

(11th Cir. 2000).  We treat an exhaustion defense raised in a motion for summary

judgment as an unenumerated Rule 12(b) motion to dismiss.  *Bryant v. Rich*, 530

F.3d 1368, 1374-75 (11th Cir. 2008).  In this context, the judge may consider facts

---

[6] The judge failed to address Maldonado's claim Officer Moody retaliated against him, on September 20, 2010, by dragging him out of the shower and then pushing him, causing a back injury.  Nevertheless, we may affirm a district judge's judgment on any ground, *see Thomas*, 506 F.3d at 1364, and it is clear from the record Maldonado did not file any grievances regarding this incident.  Because he failed to exhaust the September 20, 2010, claim, it properly was dismissed.

outside of the pleadings and resolve factual disputes, as long as those factual disputes do not decide the merits, and the parties have had a sufficient opportunity to develop the record. *Id.* at 1376. We review a district judge's factual findings concerning the exhaustion requirement for clear error. *Id.* at 1377.

Under § 1997e(a), prisoners may not bring a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The defendant bears the burden of showing the plaintiff failed to exhaust his administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The PLRA exhaustion requirement serves to allow prison officials to resolve complaints internally before being subject to suit, reduce litigation to the extent complaints are satisfactorily resolved, and improve the litigation that does occur by creating an administrative record. *Jones v. Bock*, 549 U.S. 199, 219, 127 S. Ct. 910, 923 (2007). To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison. *Id.* at 218, 127 S. Ct. at 922-23. The prison's requirements, rather than the PLRA, dictate the level of detail necessary for proper exhaustion. *Id.*

For an administrative remedy to be "available" under the PLRA, it must be "capable of use for the accomplishment of its purpose." *Turner*, 541 F.3d at 1084 (citation, internal quotation marks, and alteration omitted). Consequently,

22

retaliation or threats of retaliation may make administrative remedies unavailable to an inmate. *Id.* at 1084-85. Specifically, "a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance" render the administrative remedy unavailable if (1) the threat actually deterred the plaintiff from filing a grievance or pursuing some aspect of the administrative process, and (2) the threat is one that would deter a reasonable inmate of ordinary firmness. *Id.* at 1085. We also have noted, without deciding for this circuit, that other courts have held administrative remedies are also unavailable, when prison officials prevent the filing of grievances or fail to respond to grievances that are filed. *Bryant*, 530 F.3d at 1373 n.6.

The district judge correctly applied our precedent in treating the exhaustion defense as an unenumerated Rule 12(b) motion, and Maldonado had ample opportunity to develop the record concerning that issue. *Bryant*, 530 F.3d at 1374-76. Regarding the merits of the exhaustion issue, the judge did not err in concluding Maldonado failed to exhaust his administrative remedies concerning his claim the individual officers were deliberately indifferent to his serious medical needs, because a review of the record does not reveal any grievances filed by Maldonado concerning any deprivation or delay of medical treatment. 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 218, 127 S. Ct. at 922-23. Furthermore, the record shows Maldonado promptly received medical treatment following each of the four

incidents he identified in his deposition as supporting his deliberate- indifference claim.  Regarding his retaliation claims, the record contains no grievances concerning the July 12, 2010, August 9, 2010, or September 2, 2010 incidents.

Maldonado argues any failure to exhaust on his part should be excused, because it was caused by defendants' retaliatory conduct.  He has not demonstrated, however, he actually was deterred from filing grievances concerning the three incidents about which he complains.  *See Turner*, 541 F.3d at 1084-85. Maldonado did not identify any threats made by officers in connection with the August 9, 2010, incident, in which he allegedly was placed on suicide watch without cause.  He further did not assert the defendants prevented him from filing a grievance concerning the August 9, 2010, incident and acknowledged he did not suffer any injuries from that incident other than being "manhandled."  R. at 1153. Similarly, Maldonado did not assert the defendants made any threats or otherwise prevented him from filing a grievance concerning the September 2, 2010, incident, in which he allegedly was moved to Seg-2 for no reason.  Therefore, Maldonado did not show the defendants prevented him, via threats or otherwise, from filing a grievance concerning the August 9, 2010, or September 2, 2010, incidents.  *See Turner*, 541 F.3d at 1084-85.

Concerning the July 12, 2010, incident, Maldonado did assert that just before Officer White tased him in the face, White said something like "you won't

24

put my name in a lawsuit." R. at 1124. Although this conduct could constitute the sort of serious threat that would deter an ordinary prisoner from filing a grievance, Maldonado never asserted he was actually deterred by White's threat from filing a grievance concerning that incident. *See Turner*, 541 F.3d at 1084-85. Moreover, the record contains dozens of grievance forms filed by Maldonado throughout the course of his confinement at the NCDC, including complaints related to other incidents in which Maldonado alleged officers used physical force against him and threatened him not to pursue legal action. Even if Maldonado's allegations concerning the defendants' retaliatory conduct are true, he was not actually deterred from filing grievances or pursuing legal action because of their conduct. *See Turner*, 541 F.3d at 1084-85.

The record also contains no grievance referring to the August 12, 2011, incident, in which officers allegedly trashed Maldonado's cell and disposed of his personal property. There are, however, several grievance forms dated August 8, 9, 11, and 14, 2011, in which Maldonado requested the return of property taken from him on August 8 and 9, 2011. Given the nature of these grievances and their temporal proximity to the August 12, 2011, date, it is possible Maldonado was mistaken about the date on which his property was taken. Nevertheless, this claim appears to have been resolved administratively, because the response on the August 14, 2011, grievance form shows Maldonado's property was returned to

25

him. Consequently, the district judge properly dismissed the August 12, 2011, claim, either because it was unexhausted or because it was resolved internally. *See Jones*, 549 U.S. at 219, 127 S. Ct. at 923 (noting one of the purposes of the PLRA exhaustion requirement is to reduce litigation to the extent complaints are satisfactorily resolved at the administrative level).

The judge also did not err in dismissing Maldonado's claim concerning the July 29, 2010, incident, involving the confiscation of his personal items, because that claim was fully resolved administratively. Maldonado filed several grievances concerning the confiscation of his property and explicitly stated he believed the officers acted in retaliation for his previous grievances. The record shows, however, all of Maldonado's items were returned or replaced, and Maldonado signed acknowledgments so stating. Therefore, Maldonado's claim, though exhausted, properly was dismissed. *See Jones*, 549 U.S. at 219, 127 S. Ct. at 923.

In contrast, the judge erred in concluding Maldonado failed to exhaust his administrative remedies for the December 23, 2010, and August 8, 2011, incidents, based on the judge's finding that his grievances concerning those incidents did not state retaliation claims. We have not addressed whether, to exhaust administrative remedies for purposes of the PLRA, an inmate's administrative grievance must have alleged the specific legal theory he later pursues in a § 1983 action. The exhaustion requirement, allowing prison officials to address complaints in the first

26

instance, is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident. *See Jones*, 549 U.S. at 219, 127 S. Ct. at 923. Furthermore, the Supreme Court has held an inmate need comply only with the prison grievance procedures to satisfy the exhaustion requirement and has rejected attempts by courts to read additional procedural requirements into the PLRA. *See id.* at 202, 218, 127 S. Ct. at 914, 922-23. Consequently, the judge erred in concluding Maldonado's grievances were inadequate for purposes of exhaustion, because they did not allege a retaliatory motive.

Nevertheless, regarding the August 8, 2011, incident, the judge ultimately was correct in concluding Maldonado did not properly exhaust his claim. The NCDC procedures required a grievance contain a detailed description of the incident, including the date and time of the occurrence, and the officers or inmates involved. Maldonado's grievance concerning the August 8, 2011, incident did not identify the date or time of the incident or the officers involved; it merely stated Maldonado "got beat & punish [sic] for a remote control that came apart & for not cleaning up." R. at 1435. In addition, Maldonado wrote his complaint on an inmate-request form, instead of an inmate-grievance form, as the NCDC Inmate Handbook instructs. Accordingly, Maldonado's grievance concerning the August 8, 2011, incident did not comply with the NCDC grievance procedure, and the

27

judge correctly dismissed that claim as unexhausted.  *See Jones*, 549 U.S. at 218, 127 S. Ct. at 922-23.

In contrast, Maldonado's grievance concerning the December 23, 2010, incident largely complies with the NCDC procedural requirements.  That grievance is written on an inmate-grievance form, identifies the date of the alleged incident, identifies the officers involved, and provides a detailed account of the incident, given the space limitations on the form.  Consequently, Maldonado properly exhausted his administrative remedies concerning the December 23, 2010, incident, and the judge erred in dismissing that claim for failure to exhaust.  *See Jones*, 549 U.S. at 218, 127 S. Ct. at 922-23.

B.    Qualified Immunity

Maldonado also contends the judge erroneously placed the burden of disproving the defendants' entitlement to qualified immunity on him, when it was the defendants' burden to prove they were entitled to qualified immunity.  He further asserts the judge erroneously applied a heightened standard of proof concerning the clearly established law prong of the qualified-immunity defense. Finally, he argues the defendants waived their qualified-immunity defense, because they did not plead or prove it properly; in any event, Maldonado presented evidence establishing a genuine issue of material fact regarding the availability of that defense.

28

We review de novo a district judge's disposition of a motion for summary judgment based on qualified immunity, resolve all issues of material fact in favor of the plaintiff, and determine whether the defendants are entitled to qualified immunity under that version of the facts. *Case v. Eslinger*, 555 F.3d 1317, 1324-25 (11th Cir. 2009). Qualified immunity shields government officials performing discretionary functions from liability under § 1983, as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1325 (citation and internal quotation marks omitted). To invoke the defense of qualified immunity, a defendant must first establish he was acting within the scope of his discretionary authority. *Id.* Once the defendant has made this showing, the burden shifts to the plaintiff to overcome the qualified-immunity defense by showing (1) the defendant violated his constitutional rights, and (2) the right at issue was clearly established at the time of the alleged misconduct. *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012).

The qualified-immunity inquiry is context-specific; qualified immunity applies unless the plaintiff can show no reasonable officer in the defendant's position would have taken the same action. *See id.* To determine whether a reasonable officer would have known his conduct was unconstitutional, we ask whether either (1) under the prevailing case law at the time, a concrete factual basis

29

existed so that it was obvious to a reasonable officer that his actions violated federal law; or (2) the unlawfulness of the officer's conduct was readily apparent in spite of the lack of fact-specific case law. *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). When officers punish an inmate for filing grievances concerning the conditions of his confinement, they violate the inmate's First Amendment rights to free speech and to petition the government for redress of grievances. *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006).

To state a First Amendment retaliation claim, an inmate must show (1) he engaged in constitutionally protected activity; (2) the defendant's retaliatory conduct adversely affected his protected activity; and (3) there is a causal connection between the retaliatory conduct and the adverse effect. *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008). Once the plaintiff establishes his protected conduct was a motivating factor behind the alleged harm, the burden shifts to the defendant to show it would have taken the same action absent the protected activity. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013).

The judge did not err in placing the burden on Maldonado to overcome the qualified-immunity defense. Maldonado never disputed the defendants were acting under their discretionary authority; therefore, the burden was on him to

30

demonstrate the defendants violated his clearly established rights. *See Terrell*, 668 F.3d at 1250.

The judge did not err in concluding the defendants were entitled to qualified immunity concerning the May 26, 2011, incident. Maldonado is correct the right of prison inmates to be free from retaliation for filing grievances concerning the conditions of their confinement is clearly established. *Boxer X*, 437 F.3d at 1112. But he failed to show that Corporal Kennard had violated that right by pepper-spraying him on May 26, 2011. *See Terrell*, 668 F.3d at 1250. Maldonado contended he was pepper-sprayed in retaliation for attempting to initiate a sexual harassment investigation against another officer. Yet, he testified Corporal Kennard escorted him into his cell after he had refused to obey an order to lock down, and, while inside the cell, "a few words [were] said," and that was when Corporal Kennard pepper-sprayed him. R. at 1201. Consequently, under Maldonado's own version of the facts, it is not clear Corporal Kennard pepper-sprayed Maldonado in retaliation for his attempt to file a grievance or to subdue him and obtain his compliance with the officer's orders. Maldonado therefore did not show no reasonable officer would have taken the same action as Corporal Kennard under the circumstance; consequently, qualified immunity applies. *See Terrell*, 668 F.3d at 1250.

In contrast is the December 23, 2010, incident as to entitlement to qualified immunity.  Maldonado's account of the event alleges, after placing him in the restraint chair and rendering him defenseless, Officers Ramsey and Maher threatened Maldonado would regret bringing any lawsuits against them, then beat him, broke his finger, and burned him with a lighter.  Maldonado acknowledged he was removed from his cell after jamming his cell door in violation of jail rules but contended he did not physically resist the officers, and his injuries were sustained after he was placed in the restraint chair, when officers would have no disciplinary reason for using force against him.  Based on this account of the facts, Maldonado showed Officers Ramsey and Maher violated his clearly established rights by retaliating against him for engaging in protected conduct.  *See Terrell*, 668 F.3d at 1250; *Case*, 555 F.3d at 1325; *Boxer X*, 437 F.3d at 1112.  Therefore, the officers were not entitled to summary judgment on this claim, based on qualified immunity; we reverse the district judge's granting summary judgment on this claim.

C.    Nondispositive Motions

Maldonado asserts the district judge erred in denying his motions for appointment of counsel, an expert witness, permission to enter upon land, to compel discovery, and to reinstate Counts II, III, and IV.  He represents he was entitled to the relief sought in each of those motions, and the judge abused her discretion in denying them.

32

We review motions for appointment of counsel, discovery rulings, and motions for reconsideration for abuse of discretion. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (reconsideration); *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) (discovery rulings); *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999) (appointment of counsel).  Under that standard, we will not reverse a district judge's decision, unless we conclude the judge made a clear error of judgment or applied the wrong legal standard.  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).  Although plaintiffs in civil cases have no constitutional right to counsel, district judges may appoint counsel for indigent plaintiffs under 28 U.S.C. § 1915(e)(1).  *Bass*, 170 F.3d at 1320.  Counsel should be appointed only in exceptional circumstances; a district judge has broad discretion in making that determination.  *Id.*  The fact a plaintiff would be helped by the assistance of an attorney does not, in itself, require appointment of counsel.  *Id.*

We will not overturn discovery rulings unless they resulted in substantial harm to the appellant's case.  *Josendis*, 662 F.3d at 1307.  District judges have broad authority to control the scope of discovery and may deny a motion to compel discovery if the discovery sought is irrelevant.  Fed. R. Civ. P. 26(b); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1293 (11th Cir. 2001).  Under Federal Rule of Evidence 706, they have discretionary authority to appoint an expert witness,

either on their own motion or on the motion of a party. Fed. R. Evid. 706(a); *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). Appointment of an expert witness may be appropriate, when it is necessary to ensure a just resolution of the claim. *Steele*, 87 F.3d at 1271.

A party may move to alter or amend a judgment within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). A Rule 59(e) motion may be granted only on the basis of newly discovered evidence or manifest errors of law or fact and may not be used to relitigate old matters or present additional arguments or evidence that could have been raised prior to the entry of judgment. *Arthur*, 500 F.3d at 1343.

The judge did not abuse her discretion in denying any of the motions Maldonado seeks to appeal. She did not err in denying Maldonado's motions for appointment of counsel, because Maldonado did not demonstrate an appointment was warranted by exceptional circumstances. *Bass*, 170 F.3d at 1320. Maldonado repeatedly asserted having an attorney would be helpful to him but that is true of many pro se litigants and does not constitute an exceptional circumstance. *See id.* The judge also did not abuse her discretion in denying Maldonado's requests for appointment of an expert witness. Although a district judge has the authority to appoint an expert on a party's motion, the judge is not required to do so. *See* Fed. R. Evid. 706(a). Because Maldonado did not exhaust any claims concerning

34

deliberate indifference to his serious medical needs, the appointment of medical experts was not warranted, and the judge's refusal to appoint such experts did not result in substantial harm to his case. *See Josendis*, 662 F.3d at 1307; *Steele*, 87 F.3d at 1271. Similarly, the judge's refusal to appoint a taser expert did not result in substantial harm to Maldonado's case, because his claim concerning the July 12, 2010, taser incident was unexhausted; therefore, his requested expert was unnecessary. *See Josendis*, 662 F.3d at 1307; *Steele*, 87 F.3d at 1271.

In addition, the judge did not abuse her discretion in denying Maldonado's motions for entry upon land and to compel discovery. She properly concluded it would be inappropriate to grant Maldonado's motion for entry upon land. The burden of allowing Maldonado, who by then was incarcerated in another facility pursuant to his capital sentence, to inspect and photograph the NCDC would have outweighed the possible benefit of that discovery, because it did not relate to the central issues in his complaint. *See* Fed. R. Civ. P. 26(b)(1). Maldonado's motion to compel largely contains broad requests for information about incidents involving other inmates, which were not relevant to his individual retaliation and deliberate-indifference claims. Furthermore, Maldonado acknowledged in his motion the defendants had produced or were attempting to locate documents responsive to his request. Therefore, the judge did not commit a clear error of

35

judgment in denying his motion.  *See* Fed. R. Civ. P. 26(b); *Josendis*, 662 F.3d at 1307; *Sanderlin*, 243 F.3d at 1293.

Finally, the judge did not err in denying Maldonado's motion for reconsideration seeking the reinstatement of Counts II, III, and IV.  As the judge noted, Maldonado's motion was filed more than 28 days after her order dismissing those counts; therefore, it was untimely.  *See* Fed. R. Civ. P. 59(e).  Furthermore, his motion did not rely on newly discovered evidence or demonstrate any manifest errors of law or fact in the judge's screening order.  *Arthur*, 500 F.3d at 1343.  Instead, Maldonado contended he could have drafted a better complaint if his access to the prison law library had not been hindered and erroneously asserted the judge had dismissed the relevant counts on qualified-immunity grounds.  Consequently, Maldonado did not show reconsideration was warranted, and the judge's denial of his motion was not an abuse of discretion.  *See Arthur*, 500 F.3d at 1343.

### III.  CONCLUSION

As we have explained, we vacate and remand granting of summary judgment in part, regarding the December 23, 2010, retaliation claim but affirm granting summary judgment regarding Maldonado's deliberate indifference and other retaliation claims.  We also affirm the district judge's denial of Maldonado's

requests for appointment of counsel, appointment of an expert witness, permission to enter upon land, to compel discovery, and to reinstate Counts II, III, and IV.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**