Damon WILLIS, Calvin Matlock, Harold Williams, Dave L. Taft, Jr., Paul Huston, Syveno Wright, Eddie C. Risdal, Donald E. Phillips and Michael Millsap, Plaintiffs,

v.

Charles PALMER and Cory Turner, Defendants.

No. C12-4086-MWB

United States District Court, N.D. Iowa, Western Division.

Signed June 20, 2016

Jay Elliott Denne, Munger, Reinschmidt & Denne, Robert Tiefenthaler, Sioux City, IA, for Plaintiff.

Gretchen Witte Kraemer, Department of Justice, John Barry McCormally, Iowa Attorney General, Des Moines, IA, for Defendant.

## ORDER

MARK W. BENNETT, U.S. DISTRICT COURT JUDGE, NORTHERN DISTRICT OF IOWA

On May 25, 2016, I entered an order directing the parties to show cause why the court should not retain expert wit-

nesses in the above captioned case. (docket no. 91). On June 3, 2016, the defendants filed their show cause response/objections. (docket no. 92).[1] On that same date, the plaintiffs filed a response (docket no. 93) stating they had no objection to the court appointing experts in this case and requesting additional time to respond to the defendants' objections. On June 17, 2016, the plaintiffs filed a supplemental response (docket no. 94) to the defendants' objections.

## I. EXPERT WITNESS STANDARD

As I set out in my prior order, the court's appointment of expert witnesses is controlled by Federal Rule of Evidence 706, which states:

(a) Appointment Process. On a party's motion or *on its own*, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

(b) Expert's Role. The court must inform the expert of the expert's duties. The court may do so in writing and have a copy filed with the clerk or may do so orally at a conference in which the parties have an opportunity to participate. The expert: (1) must advise the parties of any findings the expert makes; (2) may be deposed by any party; (3) may be called to testify by the court or any party; and (4) may be cross-examined by any party, including the party that called the expert.

(c) Compensation. The expert is entitled to a reasonable compensation, as set by the court. The compensation is payable as follows: (1) in a criminal case or in a civil case involving just compensation under the Fifth Amendment, from any funds that are provided by law; and (2) in any other civil case, by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs.

(d) Disclosing the Appointment to the Jury. The court may authorize disclosure to the jury that the court appointed the expert.

(e) Parties' Choice of Their Own Experts. This rule does not limit a party in calling its own experts.

Fed. R. Evid. 706 (emphasis added). The Eighth Circuit Court of Appeals has explicitly recognized that court-appointed experts are a valid option.

[W]e conclude upon careful analysis that Federal Rules of Evidence 614(a) and 706(b), read in light of 28 U.S.C. §§ 1920 and 2412 (1982), and Federal Rule of Civil Procedure 54(d), confer upon the district court discretionary power to call [plaintiffs'] lay and expert witnesses as the court's own witnesses and to order the government as a party to this case to advance their fees and expenses, such advance payment to be later taxed as costs.

*U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1057 (8th Cir.1984). Other courts have made similar findings:

Under Federal Rule of Evidence 706, [district court judges] have discretionary authority to appoint an expert witness, either on their own motion or on the

---

1. In their response, the defendants state they have contacted the U.S. Marshal's Service and have developed a plan for holding the trial in a large auditorium at the state hospital in Cherokee. The plaintiffs did not respond to that portion of either my prior order or the defendants' response. Presumably, the plaintiffs do not object to holding the trial in Cherokee.

motion of a party. Fed.R.Evid. 706(a); *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir.1996). Appointment of an expert witness may be appropriate, when it is necessary to ensure a just resolution of the claim. *Steele*, 87 F.3d at 1271.

*Maldonado v. Unnamed Defendant*, 648 Fed.Appx. 939, 2016 WL 1637981, at \*14 (11th Cir.2016).

"A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters."); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir.1999) (finding the district court's decision to appoint a neutral expert witness under Federal Rule of Evidence 706 "appropriate" where the court faced "confusing" and "contradictory evidence about an elusive and unknown disease").

*Foster v. Enenmoh*, 649 Fed.Appx. 609, 2016 WL 2755760, at \*1 (9th Cir.2016). Some

courts treat this power as "the exception and not the rule," limiting appointment of experts to the "truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role." *Reilly v. United States*, 863 F.2d 149, 156 (1st Cir.1988).

*Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir.2016).

Once an expert is appointed, "[a] judge or clerk of any court of the United States may tax as costs the following ... [c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828." 28 U.S.C. § 1920. As stated by Judge Pratt in the Southern District of Iowa, the allocation of costs must be done equitably:

hiring court-appointed experts was a natural choice when faced with the dilemma of approving a complex settlement agreement that was the byproduct of negotiations between self-interested parties. Since "the expense mechanism under Rule 706(b)" is "essentially an equitable procedure," *U.S. Marshals Service v. Means*, 741 F.2d 1053, 1058–59 (8th Cir.1984), the Court deems it fair to tax equally the costs of these experts to the Plaintiffs, through their counsel, and the Defendant.

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 444–45 (S.D. Iowa 2001).

## II. ANALYSIS

In their show cause response, the defendants raise three primary objections to the appointment of expert witnesses: (1) it is the plaintiffs' burden to prove their case; (2) this case is dissimilar from those in Minnesota and Missouri; and (3) the allocation of cost is unfair.[2] In their response, the plaintiffs argue that defendants' objections are unfounded and the court is free to appoint expert witnesses at its discretion.

■ In their first objection, the defendants state that the plaintiffs have the burden to prove their case. This is true. However, the experts appointed by the court will not be appointed to assist the

---

**2.** Defendants also argue that the discovery deadline has expired. However, as stated in my previous order, it is not clear that a deadline to designate experts was ever set in this case. The only deadline that has expired was the general discovery deadline. As stated in the plaintiffs' response, it is not uncommon for parties to designate experts after the initial round of discovery. Regardless, I can extend deadlines for good cause and the defendants have failed to make any allegation that extending the expert deadline for appointment of the court's experts would prejudice either party.

plaintiffs in proving their case. Rather, as I set out in my previous order:

> I identified three remaining issues for trial: 1) does CCUSO's treatment program violate the constitutional "shock the conscience" standard; 2) is CCUSO's application of Iowa Code § 229(A) punitive; and 3) are the procedures at CCUSO the least restrictive alternative for committing sexual offenders... I believe that, because the questions presented are complex and involve questions of medicine, psychiatry and other behavioral sciences, the court requires expert testimony to aid in the prompt and just adjudication of this matter.

(docket no. 91, p. 8-10). Put more simply, experts are required in this case to help me resolve the dispute, not to help the plaintiffs prove their case.

■ Defendants also argue that because the plaintiffs have appointed attorneys, and because the defendants themselves can provide explanations about sex offender treatment, it is inappropriate for the court to fill in "gap[s]" in the case. See docket no. 92, p. 2. However, Rule 706 allows a court to retain an expert to help resolve a case when expert insight is required for such resolution. There is no doubt that appointing of experts by the court is an uncommon practice reserved for the most complex cases. However, I find that this is that exact type of complex case where retaining a court appointed expert is appropriate.[3]

Second, the defendants argue that this case is dissimilar from the cases I cited from Minnesota and Missouri. Specifically, the defendants note that both of those cases were class actions, whereas the plaintiffs in this case are a joined group of CCUSO patients. However, the defendants offer no explanation on how that difference could impact my Rule 706 analysis. Next, the defendants state that, in *Van Orsden v. Schafer*, the Missouri court did not appoint its own expert until the remedies phase of the litigation, and the defendants consented to the appointment. However, nothing in Rule 706, or the case law cited above, indicates that the parties must consent to the appointment or that appointment is limited only to the remedies phase of the litigation. Those differences simply have no impact on my analysis. Most tellingly, the defendants do not raise any argument that the complex legal and factual issues are different from those presented in Minnesota and Missouri.[4]

■ Finally, the bulk of the defendants' objections has to do with the apportionment of cost. Defendants' initial argument is that the pre-apportionment of fees is an impermissible fine or punishment. In support of that statement, defendants cite to cases that find the courts can assign costs to the losing party after a finding of bad faith. That is not the issue in this case. As set out above, Rule 706 states that, in cases such as this, expert compensation should be paid, "by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs." The apportionment of expert fees is not a punishment, nor does it reflect how the case may be

---

3. Defendants also argue that "in a sense, the court is prejudging the defendants and anticipating they will not provide credible information." However, that is clearly not the case. The court's experts will merely provide a context for the defendants' testimony. I will withhold rendering any judgment until after all the evidence has been presented and submitted.

4. Obviously the outcome in this case may be different from the findings in the *Karsjens* and *Van Orsden* cases. But, the differences between those cases and this case are some of the complex issues the court requires expert testimony on.

resolved. It is essentially a type of court fee that is apportioned, as Judge Pratt noted, above, equitably. At any rate, no final apportionment of cost has been made. After consulting with the parties, Judge Williams will make the final decision on how costs should be apportioned as the case proceeds, with no prejudice to how costs may be awarded at the end of trial. The one exception is, as I stated in my previous order, "'[i]f initial fees are required by the experts in evaluating whether they agree to be nominated, those fees shall be advanced by the defendants, without any prejudice to the subsequent adjudication of this case or the taxing of costs." (docket no. 91, p. 12). I make this initial determination not to prejudice the defendants, but to expedite the selection of expert witnesses.[5]

The defendants also make a factual argument that, in the *Karsjens* case, the defendants were not required to pay the expert fees, stating "[t]he Minnesota district court denied Plaintiffs' request to require Defendants to pre-pay the expert costs. Later, the court ordered expert fees paid out of the court's funds." (docket no. 92, p. 4). However, that assertion comes from a misreading of the *Karsjens*' case file. Judge Frank found that the court could not order the defendants to prepay for the plaintiffs' own expert witnesses. *See Karsjens v. Jesson*, No. CV 11–3659 (DWF/JJK) docket no. 354 *2-3 (October, 25 2013). As set out in my previous order, Judge Frank then appointed the experts

on the court's behalf, not the plaintiffs' behalf. The initial payment for the experts was then paid by the defendants, through an account set up with the court. *See Karsjens v. Jesson*, 2015 WL 7432333, at *2 and n.2 (D.Minn.2015).[6]

Finally, the defendants make a financial hardship argument, stating that Iowa has limited resources to defend lawsuits. I am sensitive to that argument, which is why I have directed that the number of experts be limited.[7] At the same time, litigation is a natural consequence of indefinite civil confinement and this is a complex case with important questions regarding the plaintiffs' constitutional rights. I cannot abdicate my responsibility to promptly and justly adjudicate this matter. And, as I found in my previous order, prompt and just adjudication requires the court to appoint expert witnesses. Accordingly, the defendants' objections are denied. The parties, along with Judge Williams, will commence securing experts as set out in my previous order (docket no. 91). To begin that process, the parties will have 45 days from the date of this order to nominate a total of four experts to Judge Williams.

## III. CONCLUSION

For the reasons set out above, the defendants' objections (docket no. 92) are denied. The parties will have 45 days from the date of this order to nominate four experts to Judge Williams. Judge Williams will then select the experts and direct the

---

**5.** Additionally, as pointed out in both my prior order and the plaintiffs' response, there is considerable case law stating that a court may consider the indigent status of one party when apportioning costs associated with a Rule 706 expert.

**6.** The defendants' confusion seems to come from a misreading of *Karsjens v. Jesson*, No. CV 11–3659 (DWF/JJK) docket no. 562 (July, 18 2014). In that order, the court directed expert fees paid out of the court's account.

The order fails to explain that the account in question was previously funded by the defendants.

**7.** I encourage the parties to work together with Judge Williams and the prospective experts to secure the required testimony at the lowest possible cost. The parties are also free to inquire whether the experts would be willing to provide *pro bono* services. However, neither the parties nor the court can compel experts to provide *pro bono* services.

cultivation of expert testimony as set out in my previous order (docket no. 91).

**IT IS SO ORDERED.**